IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
S G BORELLO & SONS, INC                No   C 03-0891 VRW

        Plaintiffs,                         ORDER

        v

CITY OF HAYWARD, et al,

        Defendants.
                                     /
```

Plaintiff S G Borello & Sons, Inc owns the Eden Roc mobilehome park, located in Hayward, California.  Borello initiated this suit on February 28, 2003, seeking a writ of mandamus declaring Hayward's mobilehome rent control ordinance unconstitutional.  Doc #1.

In its opposition to Borello's motion for a writ of mandamus, the City moved to dismiss the case under FRCP 12(c). The City's motion asserts two grounds:  (1) the claims are unripe because Borello has not sought redress in state court and (2) the claims fail because the ordinance does not deprive Borello of a fair return on its investment.  For the following reasons, the court GRANTS the City's motion to dismiss, but does so without

prejudice to Borello serving an amended complaint that spells out possibly justiciable claims that it may have regarding the Hayward ordinance and its interplay with state law.

I

On a FRCP 12(c) motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party. <u>General Conference Corp of Seventh-Day Adventists v Seventh-Day Adventist Congregational Church</u>, 887 F2d 228, 230 (9th Cir 1989). Accordingly, what follows is drawn from Borello's complaint (Doc #1), taking its allegations as true.

Borello owns Eden Roc mobilhome park in Hayward, California. This park is submetered, meaning that the electrical utility Pacific Gas and Electric Company (PG&E) delivers electricity to a master meter and bills its master-meter customer, Borello, for all electricity delivered to the park. The park's 200 tenants receive electricity via a submeter system that is owned, serviced and administered by Borello.

PG&E charges Borello for total park electricity service in a bill that does not separate tenant usage from common area usage (e g, pool, clubhouse, overhead street lighting). In accordance with California Public Utilities Code (CPUC) section 739.5(a), Borello's master-meter bill from PG&E contains a per-space, per-day submeter discount that represents the costs PG&E avoids by not providing the submeter service directly to the tenants. Borello provides its tenants with an itemized monthly bill for gas and electricity based on each tenant's submetered

usage.

As limited by § 739.5(a), Borello charges its tenants at the same rate PG&E would charge for residential service if it were providing the services directly.  Because of the submeter discount, Borello's monthly receipts from tenants for their utility usage exceed the total amount Borello pays each month to PG&E for total park usage.  The difference between those two rates is known as the "differential," which is intended to compensate Borello for the cost of maintaining and repairing the electrical system, as well as reading the individual meters at the tenants' spaces.

Over time, park residents have replaced many of the original mobilehomes with larger and updated mobilehomes having appliances and facilities that consume a greater volume of electricity.  This increased consumption of electricity occasioned brown-outs in the park.  In response, Borello upgraded the electrical system, replacing old power lines with higher capacity power lines.  Borello completed the first of five phases in the upgrade, incurring approximately $152,800 in costs.  The projected cost of the entire upgrade project is approximately $650,000.

Borello sought to pass on a portion of these costs to its tenants.  Hayward's mobilehome rent control ordinance limits parkowners' rent increases to 3% per year.  Although the ordinance allows parkowners to apply for rent increases in excess of the 3%, such additional increases may be challenged by the tenants.

On May 30, 2002, Borello gave tenants notice of a $24.78 rent increase based in part on the $152,800 upgrade to the park's electrical system.  This increase sought to recover only costs resulting from improvements to the common area electrical

3

facilities, not the individual tenant spaces.

One hundred five tenants opposed the increase and filed a petition for mediation. At the conclusion of this mediation, the hearing officer found that the Public Utilities Commission had exclusive jurisdiction over the electrical system so that Hayward could not award a rent increase related to Borello's upgraded system. The hearing officer rejected Borello's attempt to allocate between the electrical system for the common area and the 200 individual spaces. The officer also rebuffed the City's attempt to allocate between expenses related to the electrical system and unrelated expenses.

Borello contends that the combined effect of the ordinance, the Public Utilities Commission and the hearing officer's decision preclude it from obtaining a fair return on investment under the City's mobilehome rent control ordinance in violation of its constitutional rights. Accordingly, Borello urges the court to declare the City's ordinance unconstitutional, as applied to parkowners with submetered parks.

II

The standard applied on a FRCP 12(c) motion is the same as that applied on FRCP 12(b)(6) motions: i e, judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. <u>Hal Roach Studies, Inc v Richard Feiner & Co, Inc</u>, 896 F2d 1542, 1550 (9th Cir 1989). FRCP 8(a), which states that a plaintiff's pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled

4

to relief," provides the standard for judging whether such a cognizable claim exists.  <u>Lee v City of Los Angeles</u>, 250 F3d 668, 679 (9th Cir 2001).  This standard is a liberal one that does not require a plaintiff to set forth all the factual details of the claim; rather, all that the standard requires is that a plaintiff give the defendant fair notice of the claim and the grounds for making that claim.  <u>Leatherman v Tarrant County Narcotics Intell & Coord Unit</u>, 507 US 163, 168 (1993) (citing <u>Conley v Gibson</u>, 355 US 41, 47 (1957)).  To this end, a plaintiff's complaint should set forth "either direct or inferential allegations with respect to all the material elements of the claim".  <u>Wittstock v Van Sile, Inc</u>, 330 F3d 899, 902 (6th Cir 2003).

   Under Rule 12(c), judgment should not be granted "unless it appears beyond doubt that the [non-moving] party cannot prove any facts that would support his claim for relief."  <u>RJ Corman Derailment Services, LLC v Int'l Union of Operating Engineers</u>, 335 F3d 643, 647 (7th Cir 2003).  As with Rule 12(b)(6) motions, the court must assume the truthfulness of the material facts alleged in the complaint.  Moreover, all inferences reasonably drawn from these facts must be construed in favor of the responding party.  <u>General Conference Corp of Seventh-Day Adventists v Seventh-Day Adventist Congregational Church</u>, 887 F2d 228, 230 (9th Cir 1989).

### III

   The City's ripeness challenge relies on <u>Williamson County v Hamilton Bank</u>, 473 US 172, 194-95 (1982), which set forth a heightened ripeness test for constitutional takings claims.  Under <u>Williamson County</u>, there are two parts to establishing ripeness for

5

a takings claim brought in federal court against a state or subdivision thereof. The first step requires that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Id at 186. The second step requires the plaintiff to "seek compensation through the procedures the state has provided for doing so." Id at 194.

Borello does not dispute that its claims fall short of Williamson County. Instead, it argues the test does not apply because its claims arise out of the due process clause rather than the takings clause of the Fifth Amendment. This argument poses two distinct issues for the court: whether the due process clause supports Borello's claim for a fair return on investment and, if so, whether reliance on the due process clause enables it to avoid the Williamson County test.

A

To proceed under the due process clause, Borello's preliminary hurdle is long-standing Ninth Circuit precedent barring due process challenges to the deprivation of property. In Armendariz v Penman, 75 F3d 1311 (9th Cir 1996), the Ninth Circuit blocked a substantive due process challenge to a rent control ordinance, reasoning that "where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id at 1319 (internal quotations omitted). Hence, the court barred plaintiffs from resorting to the

6

1  due process clause because their claims concerned conduct that was
2  "the type of government action the * * * Fifth Amendment[]
3  regulates."  Id at 1324.
4       Borello contends the Supreme Court's recent ruling in
5  <u>Lingle v Chevron USA, Inc</u>, 125 S Ct 2074 (2005), undermines the
6  Ninth Circuit's restriction on using substantive due process in the
7  case of an alleged government taking.  The court agrees in part:
8  <u>Lingle</u> revitalizes the due process clause in the takings context.
9       <u>Lingle</u> eviscerated the "substantially advances" theory of
10 takings jurisprudence that the Ninth Circuit had developed in a
11 series of cases.  See, e g, <u>Richardson v City and County of
12 Honolulu</u>, 124 F3d 1150 (9th Cir 1997); <u>Chevron USA, Inc v Cayetano</u>,
13 224 F3d 1030 (9th Cir 2000).  In doing so the Court suggested the
14 availability of a substantive due process challenge to a regulatory
15 taking.  See <u>Lingle</u>, 125 S Ct at 2083 ("We conclude that [the
16 substantially advances] formula prescribes an inquiry in the nature
17 of a due process, not a takings test").  See also id (noting that
18 "probing the regulation's underlying validity" is "logically prior
19 to and distinct from the question whether a regulation effects a
20 taking, for the Takings Clause presupposes that the government has
21 acted in pursuit of a valid public purpose").  Justice Kennedy's
22 concurrence further encouraged resort to the due process clause:
23 "[t]his separate writing is to note that today's decision does not
24 foreclose the possibility that a regulation might be so arbitrary
25 or irrational as to violate due process."  <u>Lingle</u>, 125 S Ct at 2087
26 (Kennedy, J, concurring).
27      More compelling, <u>Lingle</u> undercuts the Ninth Circuit's
28 basis for barring substantive due process challenges to

7

deprivations of property. As discussed above, the Ninth Circuit imposed this bar on the notion that claims should rely on the explicit textual sources of constitutional protection, if available, such as the takings clause, rather than "the more generalized notion of substantive due process." <u>Armendariz</u>, 75 F3d at 1324. But <u>Lingle</u> held that challenges concerning the means-ends relationship of a statute do not implicate the takings clause. 125 S Ct at 2083. Hence, after <u>Lingle</u>, there is no explicit text for assessing whether a regulation is effective in achieving a legitimate public purpose; only the due process clause remains. See also Blaesser & Weinstein, <u>Federal Land Use Law & Litigation</u> § 2:11 (noting that, after <u>Lingle</u>, "[i]f a land use regulation furthers no public purpose whatsoever then, although just compensation is no longer available under the Fifth Amendment, the failure of the regulation to substantially advance any legitimate public purpose in violation of due process * * * would give rise to a cause of action for damages under 42 USC § 1983"). Accordingly, the court concludes that after <u>Lingle</u>, <u>Armendariz</u> and its progeny no longer preclude a substantive due process challenge to deprivations of property.

Although <u>Lingle</u> marked a path for substantive due process challenges, Borello's suit seems to stray from that path. The court is at a loss to find a substantive due process "right" to a fair return on investment. The lone Supreme Court case Borello cites in support of this alleged right is <u>Pennell v City of San Jose</u>, 485 US 1 (1988). Doc #34 at 6. In <u>Pennell</u>, the Court concluded that a rent control ordinance satisfied the due process clause because it constituted "a rational attempt to accommodate

the conflicting interests of protecting tenants from burdensome rent increases while at the same time ensuring that landlords are guaranteed a fair return on their investment." Id at 13-13. But far from fashioning a right to a fair return on investment, <u>Pennell</u> merely mentions such a return as a factor in evaluating the rationality of a rent control ordinance.

Borello's Ninth Circuit authority for a substantive due process right to a fair return lies in <u>Sierra Lake Reserve v City of Rocklin</u>, 938 F2d 951 (9th Cir 1991). The appeals court in <u>Sierra Lake</u> opined that a mobilehome parkowner "may also have a substantive due process claim to the extent it complains that [the ordinance] deprived it of a 'fair and reasonable' return on investment." Id at 958. In support of this dictum, the <u>Sierra Lake</u> court cited <u>Guaranty Nat'l Ins Co v Gates</u>, 916 F2d 508 (9th Cir 1990), a case in which the court pulled the "fair and reasonable return" standard from early Supreme Court doctrine that had long since shifted to takings law. Compare <u>Federal Power Com v Natural Gas Pipeline Co</u>, 315 US 575 (1942), with <u>Duquesne Light Co v Barasch</u>, 488 US 299 (1989) ("If the rate does not afford sufficient compensation, the State has taken the use of utility property without paying just compensation and so violated the Fifth and Fourteenth Amendments"). The Ninth Circuit has dealt with this apparent stray dictum by ignoring it: in the numerous subsequent mobilehome rent control cases, the substantive due process analysis makes no mention of a right to a fair return, even though <u>Sierra Lake</u> is cited for unrelated propositions. See, e g, <u>Halverson v Skagit County</u>, 42 F3d 1257 (1994).

The infringement of a substantive due process right

9

requires more than an unfair return.  To establish a violation of its right to substantive due process, Borello must demonstrate that the City's ordinance is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."  <u>Dodd v Hood River County</u>, 59 F3d 852, 864 (9th Cir 1995) (citing <u>Euclid v Ambler Realty Co</u>, 272 US 365, 395 (1926)).  Hence, federal judicial interference with a local government land-use decision may be proper if the government body could have no legitimate reason for its decision.  <u>Minnesota v Clover Leaf Creamery Co</u>, 449 US 456, 464 (1981).

The difference is this:  Under due process, unlike in the takings context formulated by the Ninth Circuit, there is no requirement that the statute actually advance its stated purpose; rather, the due process inquiry focuses on whether "the governmental body could have had no legitimate reason for its decision."  <u>Shelton v City of College Station</u>, 780 F2d 475, 483 (5th Cir 1986) (en banc) (citing <u>Minnesota v Clover Leaf Creamery Co</u>, 449 US 456, 464 (1981)).  "The law need not be in every respect logically consistent with its aims to be constitutional.  It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."  <u>Williamson v Lee Optical of Oklahoma, Inc</u>, 348 US 483, 487-88 (1955).

Accordingly, the court concludes the due process clause does not provide a right to a fair return on investment.

//
//
//

10

**B**

Even if Borello establishes a challenge under the due process clause, the heightened ripeness standard under <u>Williamson County</u> may still apply.  In the Ninth Circuit, due process claims must still satisfy <u>Williamson County</u> if they relate to, or arise from, a takings claim.  See <u>Norco Construction, Inc v King County</u>, 801 F2d 1143 (9th Cir 1986).  Hence, Borello cannot avoid <u>Williamson County</u> merely by labeling its claims "due process violations."  See <u>Carpinteria Valley Farms, Ltd v County of Santa Barbara</u>, 344 F3d 822, 831 (9th Cir 2003) ("Thus * * * claims under 42 USC § 1983 concerning land use may proceed even when related Fifth Amendment 'as applied' taking claims are not yet ripe for adjudication.").  See also <u>Harris v County of Riverside</u>, 904 F2d 497, 500-01 (1990).

As presently alleged, Borello's substantive due process theory arises from a taking claim.  The writ of mandamus asks the court to declare the City's ordinance unconstitutional for the reason that it does not permit Borello to obtain a fair return on its investment.  This claim implicates <u>Williamson County</u> because, like a takings case, it tests whether the ordinance goes too far. "A court cannot determine whether a regulation goes 'too far' unless it knows how far the regulation goes."  <u>Palazzolo</u>, 533 US at 620.  See also <u>Sierra Lake Reserve v Rocklin</u>, 938 F2d 951 ("The principle of 'fair and reasonable return on investment' may support a takings claim as well as a substantive due process claim")

By contrast, the substantive due process theory discussed above — i e, whether the ordinance is so arbitrary or irrational that it runs afoul of the due process clause — does not require a

11

1 heightened ripeness standard because it assesses the ordinance's
2 underlying validity rather than the extent of its burden.  <u>Lingle</u>
3 makes this very distinction:  it concluded that a substantive due
4 process claim evaluates the effectiveness of a regulation, whereas
5 the takings clause concerns itself with "the magnitude or character
6 of the burden a particular regulation imposes upon private property
7 rights."  125 S Ct at 2084.  The latter inquiry triggers <u>Williamson</u>
8 <u>County</u>; the former does not.  Accordingly, to avoid <u>Williamson</u>
9 <u>County</u>, Borello must proceed under the traditional substantive due
10 process analysis discussed above, not under its alleged right to a
11 fair return on its investment.
12      The problem Borello confronts – as the court understands
13 it – is this:  Borello buys electricity from PG&E at a bulk rate,
14 then submeters that electricity to its tenants but cannot charge
15 more than PG&E's price for providing that submetered service.
16 Borello presumably must as a condition of operating a mobilehome
17 park provide electricity to both tenants and to the common areas of
18 the park.  The cost to Borello of providing individually submetered
19 service is greater than the costs of PG&E providing that service,
20 PG&E having economies of scale unavailable to Borello (or any other
21 PG&E customer for that matter).  Forcing Borello to bear that
22 additional cost without recourse to recovery is – according to
23 whichever theory Borello pursues – either arbitrary and irrational
24 and hence a denial of substantive due process or a taking.  Because
25 it is not clear which theory Borello can elect and because the
26 ripeness inquiry may be different depending on which theory Borello
27 pursues, Borello should be permitted to spell out its claim with
28 greater clarity.

**12**

United States District Court
For the Northern District of California

IV

In sum, the court GRANTS the City's motion to dismiss both because the due process clause does not support Borello's claim for a right to a fair return on investment and because Borello's present claim fails to satisfy the <u>Williamson County</u> ripeness test.  Borello is given leave to file an amended complaint by January 15, 2007.

IT IS SO ORDERED.

*/s/ Vaughn Walker*

VAUGHN R WALKER

United States District Chief Judge